MIKE HICKS *v.* THE STATE.*

(*Nashville.* December Term, 1928.)

Opinion filed December 24, 1928.

---

*As to whether taking of a child by or at the instance of one parent, from the custody of the other, is kidnapping, see annotation in 32 L. R. A. (N. S.), 845; 8 R. C. L., 297.

ESTILL & MORGAN, for plaintiff in error.

NAT TIPTON, assistant attorney-general, for the State.

MR. JUSTICE COOK delivered the opinion of the Court.

Plaintiff in error was convicted of kidnapping and his punishment assessed at imprisonment in the penitentiary for one year. Assignments of error which challenge the sufficiency of the evidence present the question of whether the act of the father taking his children from custody of the mother, under the circumstances shown by the record, constitutes the crime of kidnapping under the statute, section 6465 of Shannon's Code, which provides:

"Every person who unlawfully takes or decoys away any child under the age of twelve years, with intent to detain or conceal such child from its parents, guardian, or other person having the lawful charge of such child, shall, on conviction, be imprisoned in the penitentiary not less than one nor more than five years."

While Hicks and his wife, Minnie Hicks, were living together in Chattanooga they quarreled. She complained of cruel and inhuman treatment; he charged her with acts of disloyalty in personal matters. As a result of repeated quarrels, Hicks went to Alabama in March, 1926, and was arrested and confined in jail, he says upon the report of his wife, and he was tried for the offense and committed to the Alabama penitentiary. In September, 1926, Mrs. Hicks, who remained in Tennessee, obtained a decree for divorce and custody of the two children upon petition filed in the circuit court of Hamilton County, while Hicks was in the Alabama prison.

Hicks testified that he had no notice or knowledge of the divorce proceeding and did not know that a decree had been entered depriving him the custody of his children and awarding them to their mother. After his release from the Alabama prison he returned to Chattanooga and on Saturday, June 9, 1927, accompanied by his nephew,

Charlie Gladney, in an automobile, went to the residence of his wife's father where the wife and children were staying. Mrs. Hicks testified that when Charlie Gladney came into the house and told her that Mike wanted to see the children she carried them out to the car where he was sitting and he took them into the car. This quotation from Mrs. Hicks' testimony shows what followed:

"I said come on children let's go. Mike said don't be in a hurry I haven't seen you folks in a long time. I said if you had treated me right you would have been with the children and I would have been your wife until death. . . . Gladney said get in the car and take a ride. I said I don't take rides with any man. He said you can get in the back seat with Mike. I said no, sir, I haven't any more right to sit back there with Mike than with any other man."

When Mrs. Hicks called for the children to carry them into the house, Gladney engaged her in conversation, and while she was talking to him Hicks drove away and carried the children to the residence of his sister in Georgia. He was arrested on Thursday following and with the children brought back to Chattanooga.

There is no direct evidence that plaintiff in error knew that his wife had been granted a divorce, with custody of the children, but it is insisted that the knowledge was imparted, immediately before he carried the children away in the car, under the circumstances disclosed by the testimony of Mrs. Hicks, as follows:

"Q. When you were there at the time with the defendant, was anything said about the divorce, and the divorce decree, and you having the custody of the children? A. Yes, sir.

"Q. What was it? A. This Gladney boy asked me to get in the car, and I told him I had a divorce and had no more right to get in the car with him than anyone else.

"Q. What did you tell him about the children? A. I told him I only had the children, all I had in this world, and if it wasn't for them I couldn't hardly live.

"Q. Was that when he was trying to interfere with you? A. Yes, sir, and I grabbed hold of the car."

Assuming that Hicks knew from this statement that his wife had been granted a divorce, nothing appears that would suggest to his layman's mind that the exclusive custody of the children had been awarded the mother unless by inference as a consequence of their tender age. The State insists, however, that ignorance of the fact that custody had been awarded to the mother would not excuse plaintiff in error, because the gist of the offense consists in taking and carrying a child away from its authorized custodian.

*(1)* Proof of the unlawful taking and carrying away by a person other than a parent of the child would be sufficient to sustain a conviction of such person or kidnapping, but when the parent of the child is on trial for kidnapping it, the motivating parental instinct and the real or supposed parental right to its custody, must be considered. It has been held that a parent, though moved by parental impulses, who unlawfully takes a child from custody of the other to whom it was awarded, is guilty of kidnapping. 35 C. J., 907, 8 R. C. L., 297.

*(2)* But if the parent ignorant of the fact that the right of custody has been judicially determined, asserts without legal process the parental claim by taking the child away, the act is not kidnapping. *Hunt* v. *Hunt,* 99 Ga., 257; *Burns* v. *Com.,* 129 Pa., 138; *State* v. *Brandonberg,*

32 L. R. A. (N. S.), 845; see, also, *State* v. *Dewey,* 40 L. R. A. (N. S.), 478.

Parents, as did these, sometimes quarrel and separate, and their children become objects of contention. Both want the children and their claim springs from nature, and the law recognizes it. Here the mother, in an *ex parte* divorce proceeding, was awarded custody without knowledge of the father, who was in the Alabama prison when the decree was entered. His claim to their custody, in the absence of a decree excluding it, could be asserted without resort to legal process, and such assertion would not render him guilty of a crime.

If ignorant of the force and effect of the decree for divorce in which custody of the children was given his wife, Hicks returned to Tennessee and asserted the parental claim he would not be guilty of the crime of kidnapping under the statute. It was intended to protect parental and other lawful custody of children against the greed and malice of the kidnapper, not to penalize the parent for the erroneous assumption of a parental right.

There is no satisfactory evidence in the record that plaintiff in error knew that exclusive custody of the children had been awarded Mrs. Hicks. Proof that he had actual knowledge would be required to authorize a verdict convicting him of kidnapping his own children. Satisfactory evidence that he had such knowledge is lacking, and the judgment must be reversed and the cause remanded.