COMMONWEALTH *vs.* DAVID N. LIBBY & another.

Suffolk. January 5, 1971. — February 1, 1971.

Present: TAURO, C.J., CUTTER, SPIEGEL, & REARDON, JJ.

*Practice, Criminal,* Venue, Charge to jury, Assistance of counsel. *Evidence,* Presumptions and burden of proof. *Error,* Whether error harmful.

On the evidence at the trial of indictments for kidnapping and rape, there was no merit in a contention that the Commonwealth had failed to show that venue was in the county in which the proceedings were brought. [619–620]

On the record of the trial of a rape case, the admission of testimony as to the defendant's marital status, if error, was harmless. [621]

No error appeared at a criminal trial in that the judge, besides defining proof beyond a reasonable doubt in usual terms, illustrated its meaning by stating considerations which might affect jurors in making important decisions in their own lives. [621]

Nothing in a kidnapping and rape case indicated that experienced counsel for the defendants inadequately investigated the case or searched for witnesses before trial or were negligent or incompetent at trial. [621–622]

INDICTMENTS found and returned in the Superior Court on September 10, 1965.

Motions for a new trial were heard by *Rose,* J.

*Mark A. Michelson* for the defendants.

*William A. Doherty,* Assistant District Attorney, for the Commonwealth.

CUTTER, J. On September 10, 1965, Libby and Paul E. Fleming were indicted for the kidnapping and rape on June 27, 1965, of a nineteen year old girl (Nancy). The evidence would warrant the jury in concluding that these defendants late on Saturday evening (June 26) picked her up by threats and force in Suffolk County and took her by automobile to a place, possibly in Norfolk County, although the evidence concerning its precise location was not clear. In a secluded spot, Fleming had intercourse with Nancy, as he admitted. Libby denied having intercourse with Nancy, but her testimony was that he did. On conflicting evidence the jury reasonably could conclude that the intercourse with each defendant was without Nancy's consent. The defendants left her with another group of young men who later turned her over to others. There was evidence that she was raped by at least two of these persons. She eventually was taken (by a person other than either defendant) to a house of a friend (a girl) about 6 A.M. on Sunday morning.

At the trial under G. L. c. 278, §§ 33A–33G, before a former judge (the trial judge) of the Superior Court and a jury, each defendant was represented by a court-appointed attorney. Libby's attorney was from the Massachusetts Defenders Committee. Fleming's attorney had formerly been associated with that committee. Each defendant was found guilty on each indictment on April 22, 1966, and thereafter was sentenced.

Libby's attorney filed a claim of appeal one day late. Fleming's attorney filed no appeal. Thereafter, each defendant filed a petition for a writ of error in the county court. These petitions were ordered stayed until motions for new trials were dealt with in the Superior Court. See

*Earl* v. *Commonwealth,* 356 Mass. 181.    See also *Libby* v. *Commonwealth,* 357 Mass. 779.

The single justice appointed new counsel to act for the defendants in these and subsequent proceedings.[1]    A motion for a new trial then was filed by each defendant as to each conviction and was heard (see G. L. c. 278, § 29, as amended through St. 1966, c. 301; *Commonwealth* v. *Gedzium,* 261 Mass. 299, 301–307) by a second Superior Court judge (the motion judge) because the trial judge by then was no longer a member of the Superior Court.    The case is before us on each defendant's appeal (G. L. c. 278, §§ 33A–33G) from the denial of those motions concerning which the motion judge filed a careful memorandum.

1.  The motion judge, as we read his memorandum and the transcript of the hearing on the motions for new trial, dealt broadly with the issues of law presented by the motions to determine whether there was reversible error at the original trial or other reason for a new trial to avoid a miscarriage of justice.    It may be that our review of the rulings of the two judges need not be as comprehensive, an issue which we do not decide.    In view of the change of judges (dealing with the cases in the Superior Court), we (as a matter of discretion) have reviewed the original trial record on the same basis as if appeals (presenting the assignments of error now argued) had been claimed seasonably in the Superior Court.  We conclude that the rulings of each judge were correct and that at trial there was no reversible error.

2.  The defendants now contend that the prosecution did not establish that venue for trial of the indictments was in Suffolk County.    This contention is without merit.    The conflicting evidence warranted the conclusion, not only that the alleged rapes took place in Suffolk County, but that Nancy was taken by force from Suffolk County to the place of the attacks upon her, wherever that place was, a fact sufficient to place venue in Suffolk County under our stat-

---

[1] The attorney then appointed by the single justice has conscientiously presented all points susceptible of argument.    He may apply in the county court for an allowance for his services and expenses.

utes.[2]  In any event, no question about venue appears to have been raised at or before trial.  That issue, of course, has no bearing upon whether the alleged attacks in fact occurred.

3. Each defendant on cross-examination was asked whether he was married.  Fleming's attorney did not object to the question but saved an exception, on the ground of relevance, to a later question about the number of Fleming's children.  Libby answered over the objection of his attorney, who saved no exception.  Each defendant on direct examination had testified that he either had, or attempted to have, intercourse with Nancy, and that a third man named "Ralph," who was with them on the night in question, did so too.  The penalty for adultery (G. L. c. 272, § 14), of course, is more severe than that for fornication (c. 272, § 18).  Neither defendant, with respect to these questions, raised any issue that he might be incriminating himself as having committed adultery or that the inquiry might otherwise be prejudicial.  There had been reference (without objection) to Fleming's wife in earlier testimony.  There was also later reference to her.  No emphasis appears to have been laid on the fact of each defendant's marriage.

The trial judge, in his discretion, could have excluded the testimony as tending to confuse the issues, and possibly as giving the jury opportunity to punish the defendants, not for rape, but for marital infidelity.[3]  Even had there

---

[2] In view of this evidence, there was no occasion for any request under G. L. c. 277, § 57A, for a determination concerning venue or permission for the prosecution to proceed in Suffolk County.  The Commonwealth's evidence made out a prima facie case showing venue in Suffolk County.  Cf. the doubtful situations considered in Commonwealth v. Mannos, 311 Mass. 94, 102–104; Commonwealth v. Stasiun, 349 Mass. 38, 53–54.  With respect to the offences of kidnapping and rape, there is wide latitude in trying a defendant in either the county from which or the county to which the victim was taken.  See G. L. (Ter. Ed.) c. 265, §§ 24A and 27.  There is no suggestion that trial in Suffolk County where the defendants lived, rather than in Norfolk County, was in any way prejudicial to the defendants' defences on the merits, or otherwise disadvantageous to them.

[3] Many authorities treat as inadmissible in rape cases evidence of a defendant's marital status where (cf. People v. Woods, 75 Cal. App. 2d 246, 247) the matter is squarely presented.  See annotation, 62 A. L. R. 2d 1067.  Compare, however, Hayton v. Commonwealth, 332 S. W. 2d 537, 538–539 (Ky.) (testimony of a defendant on direct examination about residence "opened up questions relating to his residence and any other pertinent preliminary personal status"); State v. Norton, 151 Maine, 178, 183–184, cross-

been more direct objections and appropriate exceptions, it would not have been prejudicial error to admit the answers. As to Fleming, the answer was merely cumulative. By taking the stand in his own defence, Libby submitted himself to all reasonable cross-examination. See *Commonwealth* v. *Galvin,* 310 Mass. 733, 748. Cf. *Jones* v. *Commonwealth,* 327 Mass. 491, 493–497. That submission ordinarily should extend at least to basic or routine facts concerning his background such as marital status. Admission of the incidental testimony about the marital status of the defendants seems to us to be harmless error, if error at all.

4. The motion judge, after reviewing the trial judge's charge to the jury, correctly ruled that, "with respect to the substantive offence of rape" and the definition of proof beyond a reasonable doubt, the charge "stated the traditional requirements of proof with clarity." No exception was saved to the charge on the elements of the crime of rape, which had been defined simply and incisively. The principal argument made with respect to the charge on "reasonable doubt" is that the judge used, as an illustration of the meaning of the term, the considerations which might affect jurors in making important decisions in their own lives. He had previously pointed out to the jury that the civil case requirement of proof by a fair preponderance of the evidence did not apply in a criminal case and had explained, in usual terms, what constitutes proof beyond a reasonable doubt. Nothing in his further explanation varied from reasonable and frequently employed methods of charging on this subject.

5. The motion judge ruled that there was no credible evidence at the original trial and at the hearing on the motions for a new trial, "which establishes either negligence or . . . [incompetence] of the" defendants' attorneys at trial. As the motion judge pointed out, both "counsel were

examination of a defendant (charged with indecent liberties with his stepdaughter) involved references to the defendant's wife, a matter of relevance left to the trial judge's discretion. Cf. also *State* v. *Sinnott,* 24 N. J. 408, 416–417 (evidence of marital status held admissible at defendant's request in a sodomy prosecution).

Commonwealth *v.* Libby.

seasoned . . . criminal trial lawyers." Examination of the record indicates that defence counsel did as much as they could in the circumstances. Each of the attorneys who represented a defendant at trial testified at length at the hearing before the motion judge. He concluded, as do we, that "nothing . . . indicated that the defendants did not receive adequate, competent, and skillful representation at . . . trial" [4] of a "difficult" matter.

We perceive no inadequacy in counsel's pre-trial investigation. The testimony of witnesses at hearings in the Dorchester District Court was available to, and used by, original defence counsel. The transcript of pre-trial hearings in which they participated was available. At one of these (March 14, 1966), Nancy herself testified in some detail. Some questions and answers at prior hearings were introduced in evidence.

In the circumstances disclosed by the defendants' own testimony, original defence counsel cannot be said to have made an inadequate search for witnesses. Their own clients said they did not know the last name of the third man "Ralph" who had been with them, or anything about him. The only other witnesses to the alleged events (according to the defendants) were Nancy and the defendants. The admitted criminal events were over when the second automobile came along. The defendants testified that they knew none of its occupants with whom they left Nancy.

In the circumstances the tactics of counsel during the trial cannot be said to have been inappropriate.

*Order denying motions for*
*new trial affirmed.*

---

[4] Counsel refer us to various cases holding assigned counsel to be adequately effective. See *Cardarella* v. *United States,* 375 F. 2d 222, 229–232 (8th Cir.); *Bates* v. *Wilson,* 385 F. 2d 771, 773 (9th Cir.); *Vizcarra-Delgadillo* v. *United States,* 395 F. 2d 70, 71–72 (9th Cir.); *Harris* v. *Dees,* 421 F. 2d 1079, 1081–1082 (5th Cir.). Cases to a contrary effect include *Stem* v. *Turner,* 370 F. 2d 895, 900 (4th Cir.); *Campbell* v. *United States,* 377 F. 2d 135, 136 (Ct. App. D.C.); *Brooks* v. *Texas,* 381 F. 2d 619, 624–625 (5th Cir.); *Coles* v. *Peyton,* 389 F. 2d 224, 225–227 (4th Cir. — various inadequacies mentioned in rape case); *Calloway* v. *Powell,* 393 F. 2d 886, 887–888 (5th Cir.). Cf. also *People* v. *Ibarra,* 60 Cal. 2d 460, 466 (ignorance and lack of preparation of defendant's counsel "reduced his trial to a farce and a sham").