Tilton RYE, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

Sept. 30, 1975.

Certiorari Denied by Supreme Court
Dec. 5, 1975.

Allen W. Wallace, Waverly, and Wm. D. Howell, Dover (on trial), Dale M. Quillen, Nashville (on appeal), for plaintiff in error.

R. A. Ashley, Atty. Gen., David L. Raybin, Asst. Atty. Gen., W. B. Lockert, Jr., Dist. Atty. Gen., Ashland City, J. Kenneth Atkins, Erin, Asst. Dist. Atty. Gen., for defendant in error.

RUSSELL, Judge.

OPINION

Tilton Rye appeals in error his convictions in the Circuit Court of Houston County for murder in the first degree and two charges of assault with the intent to commit same. Punishment was set at life im-

prisonment for the murder, and sentences concurrent therewith of six (6) to ten (10) years fixed for each felonious assault. Rye shot to death his wife's father, and shot his wife and her mother.

The tragic events commenced when Rye became angry with his wife because she would not ride in his automobile with him. When Mrs. Rye left a trout farm where the parties were, driving Rye's car, he pursued her in another car. After several attempts by Rye to halt the car driven by his wife, he managed, on one occasion to stop it and tear open a car window. Mrs. Rye and her daughter were able to flee. They drove around the Courthouse several times looking for the sheriff. They then drove to the home of her parents. Plaintiff-in-error followed, and under the State's proof after Mrs. Rye had stopped the car in the driveway he pulled a window out of the car and reached under the seat and obtained a pistol. His wife left the car and ran toward the house. Her father, Mr. Charles F. Kent, Sr., came out of the house and Rye fired three shots at him. Rye struck his wife and her mother, and then threw the latter up against the wall of the house. He chased the two women into a bedroom, where he shot and beat his wife over the head with the pistol. The women managed to barricade themselves in another bedroom. Rye went outside and reloaded his pistol, at this time also hitting his daughter, Cynthia.

The women obtained a pistol and fired a shot through the door, hoping to scare Rye away. He nevertheless broke open the door, shot his wife in the left hip and her mother in the elbow. He was beating his wife over the head with the pistol when her mother managed to hit him over the head with her pistol and at this point the women managed to escape and Rye got into his car and left.

Rye testified upon his trial that he was shot in the head when he arrived at the Kent house and remembered nothing thereafter.

■ It is contended upon this appeal that the evidence was insufficient to support first degree murder or assault to commit same. It is said that the evidence is conflicting and that the actions of Rye did not reflect the coolness of purpose necessary to first degree murder.

The jury has resolved the evidence conflicts, and there appears to be no reasonable doubt that Rye committed murder and felonious assaults. There is strong evidence that his intention to shoot his wife was preconceived. He had a loaded pistol in his car, and became incensed when she wouldn't leave the trout farm with him in that car. His subsequent acts all reflected his purpose to get the gun from the car and shoot her. The jury was justified in finding that his reason was not overcome by passion. That he was filled with malice and anger is obvious; but there is more than sufficient evidence to support the State's position that murder was premeditated and that Rye was capable of premeditation. The assignment of error testing the sufficiency of the evidence is overruled.

Error is assigned upon the District Attorney General's closing jury argument. It is said that Rye "was prejudiced by the District Attorney General's argument, which was calculated to inflame the minds of the jurors."

We would observe at the outset that defense counsel, by his own admission, deliberately made no contemporaneous objection to any of the argument. What he chose to do was to wait until all argument was over, ask that the jury be sent out, and move for a mistrial.

■ Our cases hold that objections to improper jury argument must be made at the time. *Hunter v. State,* 222 Tenn. 672, 440 S.W.2d 1 (1969); *White v. State,* 210 Tenn. 78, 356 S.W.2d 411 (1962). In *Turner v. State,* 188 Tenn. 312, 219 S.W.2d 188, it was said:

"It is thoroughly settled, under our practice, that objectionable argument or im-

proper remarks of counsel afford no ground for a new trial, where no objection is made or exception taken at the time of the argument. (citing cases)."

There are many good reasons for this rule. Among others, the trial judge can often effectively instruct the jury to disregard improper argument; counsel can be held within permissible limits before going so far as to commit harmful error; and, of course, defense counsel may be of the opinion that facially illegal argument is in a given instance more helpful than harmful to his client and deliberately waive any objection.

Often intemperate argument is brought on by the excesses in argument of the other side. Here, we do not have the argument of defense counsel in the bill of exceptions.

We are not impressed by the contention that prosecution argument "was prejudicial". It is not the fact that it hurts that is controlling. Legal and proper argument is often very prejudicial.

■ The question to be determined when an objection to argument is interposed is whether or not the argument is proper. The standards for making this judgment are not always easy to apply. It is only after argument is determined to be improper that its possible prejudicial effect must be judged. Our Supreme Court has said, in the case of *Harrington v. State,* 215 Tenn. 338, 385 S.W.2d 758 (1965):

"[3, 4] The argument and conduct of counsel has been discussed by this Court in a number of cases. They are found in Volume 7, Tennessee Digest, Criminal Law, 699–730. The general test to be applied is whether the improper conduct could have affected the verdict to the prejudice of the defendant. * * * "

On the question of what argument is proper, the following language may be found in the case of *Smith v. State,* 205 Tenn. 502, 327 S.W.2d 308 (1959):

"(33) The full argument of the District Attorney General as was made to the jury is contained in one small volume among the volumes of this record. The plaintiffs in error complain as to portions of this argument. They assign it as error wherein the District Attorney General argued that if they found the plaintiffs in error not guilty and turned them loose that they would be branding a woman witness who testified against one of them as a whore. This is not error because that is exactly what the plaintiffs in error attempted to do in their testimony about this woman. There is certainly ample proof in the record, what the plaintiffs in error said themselves, that entitled this to be argued and answered by the District Attorney General. Complaint is also made along this line that the District Attorney General argued in effect and contended in his argument that the plaintiffs in error were criminals and gangsters. This argument was warranted by the evidence, if for nothing more was warranted under the voluntary statement made by the plaintiff in error Smith that he had been so branded over a period of time. Arguments of the kind were not prejudicial or intemperate but were warranted from the facts and circumstances of the case. When such is true certainly the District Attorney General cannot be censured for arguing the facts as he saw them."

In the case under consideration certainly a strong argument was made by the prosecuting attorney. At one point he referred defense arguments as "a bunch of crap." He compared the death of Mr. Kent to the killing of Christ. He made the point that Mr. Kent was retired. He criticized plaintiff-in-error for drinking beer on Sunday and not going to church. He said that he didn't guess that Rye went into military service, saying, "I'm sure they would have brought it out if he did". At one point he apparently misquoted the testimony of a witness.

The learned and experienced trial judge specially charged the jury:

"I have been asked to charge you and I do charge you that in the final argument the District Attorney referred to testimony on one witness for defendant, Tommy Turner, as saying that defendant said, 'Don't let them shoot me', when in fact the witness testified the defendant said, 'Don't shoot me'.

"The argument of the District Attorney or any other attorney is not to be weighed as evidence, but you are to weigh only evidence you heard testified to in the trial of this cause, and give it such weight as you feel necessary."

He had already charged the jury:

"Both the defendant and the State are entitled to your calm, unbiased judgement upon the truth of the charges in the indictments.

"The object of this investigation is to find the truth and act accordingly.

"You can have no sympathy or prejudice in any criminal case, but will decide the case solely and alone upon the facts as shown in the proof and upon the law given you in charge."

■ We hold that it was not error to refuse to grant a mistrial because of the argument of the District Attorney General, in the total context of this case. It was not contemporaneously objected to, was only partially improper, and the trial judge's charge directed the jury as to what they should properly consider. Rye's guilt is clear, and his punishment could have been much more severe. No prejudice from any improper argument is discernable.

■ The next plaint of Rye is that the trial judge should have charged as per Chapter 163 of the Public Acts of 1973, now codified in T.C.A. § 40–2707, and dealing with parole eligibility. After the jury had deliberated for a time they inquired of the trial judge as to the real meaning of a life sentence. At that time the trial judge offered to charge the jury pursuant to the

mandate of T.C.A. § 40–2707, but defense counsel explicitly refused to agree that he do so. (Counsel disagrees that they "objected to" such a charge, but agree that they expressly would not agree to its being given.) It is readily understandable that competent defense counsel might prefer that this statute not be followed and the charge explaining parole eligibility given. Where this preference is expressed and honored, as here an assignment of error predicated upon the judge's failure to so charge is without merit.

■ Finally, it is claimed that the jury in fact considered parole eligibility. Apparently affidavits from some jurors were taken on this point, but they are not in the record. No witnesses on the question were heard during the hearing upon the motion for a new trial, and no finding of fact was made by the trial judge. The assignment is overruled.

The convictions are affirmed.

WALKER, P. J., and DUNCAN, J., concur.