**STATE of Tennessee, Appellee,**

v.

**Rhonda HOLTCAMP, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Dec. 29, 1980.

Selma Cash Paty, Chattanooga, S. Karen Solomon, Knoxville, for appellant.

William M. Leech, Jr., Atty. Gen., Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, Frank M. Groves, Jr., Asst. Dist. Atty. Gen., Chattanooga, for appellee.

## OPINION

TATUM, Judge.

The defendant, Rhonda Holtcamp, was convicted of kidnapping in violation of T.C.A. § 39–2602. Her punishment was fixed at 90 days in the County Workhouse, but 60 days of this workhouse sentence were suspended by the trial judge. On this appeal, the defendant insists that the evidence does not support the jury verdict, T.C.A. § 39–2602 (1975) is unconstitutional, venue was insufficiently shown, the trial judge erred in rulings concerning the admission or exclusion of certain testimony, the District Attorney General made improper argument, the trial judge improperly instructed the jury, and the trial judge abused his discretion in the matter of probating her sentence. We resolve these issues in favor of the State and affirm the conviction.

The defendant was convicted of kidnapping her own child, Carrie Ann Spangler, whose custody had been committed to the child's father, Richard Douglas Spangler, the defendant's ex-husband.

The defendant and Spangler were married in December, 1972; and after living together for approximately one month, they were subsequently divorced by the Circuit Court of Hamilton County. The child was born as a fruit of this marriage but not until after her parents were divorced. After the birth of the child, the Circuit Court originally granted her custody to the defendant; but after considerable litigation, the Circuit Court awarded custody to the father, Mr. Spangler. An order was entered by the Circuit Court which granted the defendant one over-night visitation privilege with the child each week; however, when the defendant had three or more days off from her work, then she had two nights' visitation privilege.

There is much conflicting evidence in the record concerning whether the father cooperated with the defendant concerning her visitation rights. Insofar as this evidence might have been material either as to guilt or punishment, this conflicting evidence was resolved by the jury and need not be detailed here.

About December, 1976, the defendant admittedly lied to Mr. Spangler and his mother by telling them that she had entered military service and could not be reached or contacted in any way. She also told them that she could not visit the child on a regular basis in the future. This false information was not corrected before the child was taken by the defendant to New York.

On Saturday, the defendant telephoned Mr. Spangler at his residence in Chattanooga and got permission to visit with the child the next day which was Easter Sunday, April 12, 1977. The defendant came to Mr. Spangler's mother's home in the early afternoon on Easter Sunday and informed Mr. Spangler that the child would be returned that same evening. She telephoned Mr. Spangler later in the day and obtained his agreement for her to keep the child until the next morning, Monday. Instead of returning the child to her home in Chattanooga, the defendant returned to her residence in New York with the child. In explaining this action, the defendant testified: "I had to go back to work, and I had to leave Monday, and I just took her with me. She wanted to go."

Mr. Spangler did not know that the defendant resided in New York and had no idea where his child could be located. He made much effort to locate the child; and on May 4, 1977, through the efforts of a private detective, his child was located at a bar and grill in Brooklyn where the defendant was employed. The evidence is conclusive that the defendant was aware of the provisions of the Circuit Court Decree when she took the child to New York. The defendant testified that she did not tell Mr. Spangler of her intention to remove the child because, "I knew he wouldn't allow me to take her."

The defendant insists that T.C.A. § 39–2602 does not apply to her as a parent. She insists that the wording of the statute does not proscribe the taking of a child by one parent when the other parent has legal custody.

In *Hicks v. State*, 158 Tenn. 204, 12 S.W.2d 385 (Tenn.1928), the Supreme Court recognized that the statute is violated by a parent who unlawfully takes a child from the custody of the other parent who has been awarded custody by a court of competent jurisdiction. The court reversed Hicks' conviction because he was ignorant of the fact that the right of custody had been judicially determined and that legal custody had been awarded to the child's mother, from whom he had taken it. In *Johnson v. Johnson*, 185 Tenn. 400, 206 S.W.2d 400, 403 (1947), our Supreme Court said:

"This Court in *Hicks v. State*, 158 Tenn. 204, 12 S.W.2d 385, held by necessary implication that after the awrding (sic) of the custody of the child to one parent with the full knowledge of the other parent, then the forcible or surreptitious removal of this child by the other parent would amount to kidnapping."

The Sixth Circuit, United States Court of Appeals, speaking through Judge Harry Phillips, recognized the foregoing quote from *Johnson v. Johnson* to be a correct statement of Tennessee law. *Harris v. Turner*, 329 F.2d 918, 923 (6th Cir. 1964). The record leaves no doubt that the defendant had full knowledge of the award of custody of the child to Mr. Spangler. There is no merit in this issue.

The defendant next alleges that T.C.A. § 39–2602 (1975) is unconstitutionally vague since an average man or woman of ordinary intelligence could not determine that the statute applied to the actions of a parent. The statute is in the following language:

"Every person who unlawfully takes or decoys away any child under the age of sixteen (16) years, with intent to detain or conceal such child from its parents, guardian, or other person having the lawful charge of such child, shall, on conviction, be imprisoned in the penitentiary not less than one (1) year nor more than five (5) years."

The fair warning requirement embodied in the due process clause prohibits the states from holding an individual criminally responsible for conduct which he could not reasonably understand to be proscribed. *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996 (1954). The prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. The due process clause requires only that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden. *Rose v. Locke*, 423 U.S. 48, 49–50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185, 188 (1975); *State v. McDonald*, 534 S.W.2d 650, 651 (Tenn.), *cert. denied*, 425 U.S. 955, 96 S.Ct. 1733, 48 L.Ed.2d 200 (1976).

In *McNeely v. State*, 391 N.E.2d 838 (Ind. App.1979), the Indiana court was faced with an identical issue concerning the Indiana statute,[1] which, in pertinent parts, is identical to the Tennessee statute. The Indiana court rejected the argument that its statute was unconstitutionally vague, saying:

"Mindful of the maxim that '(a) statute will not be found unconstitutionally vague if individuals of ordinary intelligence would comprehend it to adequately inform them of the conduct to be proscribed,' *Platt v. State*, (1976) Ind.App., 341 N.E.2d 219, 221, we are convinced that any ordinarily intelligent parent having not lawful charge or custody of

---

1. The language of the Indiana statute is as follows: "Whoever takes, leads, carries, decoys or entices away a child under age of fourteen (14) years, with intent unlawfully to detain or conceal such child from its parents, guardian or other person having the lawful charge or custody of such child, and whoever, with the intent aforesaid, knowingly harbors or conceals any

such child so led, taken, carried, decoyed or enticed away, on conviction, shall be fined not less than fifty dollars ($50.00), nor more than one thousand dollars ($1,000.00), and be imprisoned in the state prison not less than two (2) years nor more than fourteen (14) years." 391 N.E.2d at 839.

one's child who takes, leads, carries, decoys or entices such child with the intent to detain or conceal said child from the law-endowed custodial parent, knows that he is committing a crime, that is, stealing a child. Indeed, we cannot reasonably assume that the legislature would exempt a transgressing parent from what otherwise would constitute an act of child stealing by any other person." 391 N.E.2d at 840.

■ The words of T.C.A. § 39–2602 (1975) are of common usage; they are to be taken in their natural and ordinary sense without a forced construction to limit or extend their meaning. *Ellenburg v. State*, 215 Tenn. 153, 156, 384 S.W.2d 29, 30 (1964); *Palmer v. State*, 47 Tenn. (7 Cold.) 82, 86 (1869). The words of this statute which prohibit the taking of a child from a "person having lawful charge of such child" are sufficiently plain and precise to put any reasonable individual on notice concerning what conduct is prohibited. We hold that the statute is constitutional.

■ The defendant insists that the evidence is insufficient to support the verdict because her taking of the child was lawful since the Circuit Court Decree gave her visitation rights and since Mr. Spangler gave her permission to take the child. Obviously, the taking and removal of the child was surreptitious and was not in accord with either the Circuit Court Decree or the permission of Mr. Spangler. The surreptitious removal of the child by the parent who does not have legal custody is kidnapping. *Hicks v. State, supra; Johnson v. State, supra; Harris v. Turner, supra.*

■ The defendant also argues that the evidence does not show an intent to detain or conceal the child from Mr. Spangler. There is evidence that she willfully lied to Mr. Spangler by telling him that she was entering military service and by concealing the fact from him that she actually resided in New York. She lawfully had the child in Hamilton County Sunday after-

noon and Sunday night, but the lawful visitation ceased as the defendant left for New York with the child on Monday morning instead of returning the child to the Spangler home. She kept the child in New York for almost one month without notifying Mr. Spangler of the child's whereabouts. This is evidence of the defendant's intent to detain or conceal the child from Mr. Spangler at the time she took it. Intent may be proved by circumstantial evidence. *Poag v. State*, 567 S.W.2d 775, 778 (Tenn.Cr.App. 1978).

■ Further, the intent to detain or conceal need not be present when the child is taken from the physical custody of the parent to whom the Court has granted custody. The statute is violated when a parent without lawful custody formed the "intent to detain or conceal the child" from its custodial parent while enjoying lawful visitation rights and unlawfully detains the child in furtherance of this intent. The statute proscribes the taking from law-endowed custody or the surreptitious removal of the child by one exercising temporary visitation privileges. The evidence meets the standard fixed by Rule 13(e), Tennessee Rules of Appellate Procedure.

■ The defendant denies that the venue of this prosecution is in Hamilton County. T.C.A. § 40–109 [2] provides:

"For the offenses specified in §§ 39–2602 and 39–3709 the jurisdiction is in the county in which the offense was committed, or in any other county into or through which, in the commission of the offense, the person upon whom it was committed may have been carried."

With respect to the offense of kidnapping, there is wide latitude in trying a defendant in either the county from which the victim was taken or the county to which the victim was taken. *Commonwealth v. Libby*, 358 Mass. 617, 266 N.E.2d 641, 643, n. 2 (Mass. 1971). There is evidence that the defendant surreptitiously took the child from Hamil-

**2.** This statute was in effect at the time the offense was committed. It was subsequently replaced by Tenn.R.Crim.P. 18(d).

ton County to the State of New York. This issue has no merit.

■ In her next issue, the defendant says that the trial judge erred in restricting her cross-examination of the State's witness, William M. Barker. This witness is an attorney who represented Mr. Spangler in a child custody trial which was held after the child's abduction. He was called by the State to testify with regard to certain admissions made by the defendant when she testified at the custody trial. Defense counsel asked the witness several questions concerning his recollection of other details of the defendant's prior testimony and the trial judge sustained an objection to one question as being immaterial to the issues in this instant case. The defendant insists that she was entitled to test the witness's memory of the details of her testimony given in the other trial to test the witness's memory in an effort to discredit his testimony.

The trial judge has a wide latitude and a large discretion in the control of cross-examination of witnesses, and his exercise of such discretion will not be interfered with except in case of plain abuse of it. *State v. Fowler*, 213 Tenn. 239, 373 S.W.2d 460, 466 (1963). We find no such abuse of discretion in this instance, and we must overrule this issue.

■ Next, the defendant makes issue that the witness Barker gave "incorrect, false and misleading testimony to the effect that the defendant testified at the former trial that the defendant 'had planned to abscond with the child before she actually did it.'" This issue is an attack on the credibility of the witness which is a question for the jury. *Davis v. State*, 577 S.W.2d 467 (Tenn.Cr.App.1978). The defendant filed a verbatim transcript of her testimony at the custody hearing with her motion for a new trial. We have read the

transcript and construe the defendant's answer to the question on this point to be a tacit admission that she had previously planned to abscond with the child.[3] The witness Barker was testifying from his memory without the benefit of notes or a transcript.

■ In the next issue, the defendant contends that the trial court improperly allowed the State to cross-examine her concerning her prior conviction for shoplifting. In *State v. Morgan*, 541 S.W.2d 385, 388–389 (Tenn.1976), the Supreme Court adopted Rule 609 of the Federal Rules of Evidence. That rule allows cross-examination concerning any crime if it "involved dishonesty or false statement" for impeachment purposes. Shoplifting is a crime involving theft. T.C.A. § 39–4235. Stealing is dishonest conduct and an offense involving such conduct is a proper subject of cross-examination. *Price v. State*, 589 S.W.2d 929, 932 (Tenn.Cr.App.1979); *Arnold v. State*, 563 S.W.2d 792, 795 (Tenn.Cr.App.1977). The trial judge properly permitted the State to cross-examine the defendant with regard to the conviction for shoplifting.

■ The defendant also complains that the trial judge failed to instruct the jury that the evidence concerning the shoplifting conviction should only be considered to impeach her testimony and not for the purpose of determining her guilt. The defendant made no request for this instruction. The District Attorney General stated in his argument that the evidence could only be considered by the jury to determine her credibility as a witness. While we think it is the better practice to instruct the jury as to the limited purpose for which such testimony is admitted, we are satisfied that the trial judge's failure to give this instruction did not affect the judgment or result in prejudice to the judicial process. *See* Rule 36(b), Tennessee Rules of Appellate Procedure.

---

**3.** This is the question and the defendant's answer:

    Q. You set this whole thing up by moving to Brooklyn, New York in December of 1976 by telling Mr. Spangler and his family you had joined the Army and as soon as you finished

basic training you were going to Germany and took off with the child. This took a little planning, didn't it?

    A. About as much planning as it did for them to move to Ohio without telling me."

The defendant next complains of three alleged instances of prosecutorial misconduct in jury argument. In the first portion complained of, the trial judge sustained defense's objection to the argument and instructed the jury to disregard it. The trial judge did all that he was asked to do in connection with this portion of the argument; we find no error here. No objection was made to the other portions of the District Attorney General's argument. While we think the argument was proper, we must overrule these issues because in failing to object to this argument, there is no error. *State v. Sutton*, 562 S.W.2d 820, 825 (Tenn.1978); *Rye v. State*, 532 S.W.2d 941, 943 (Tenn.Cr.App.1975).

 The defendant further complains of the denial of a special request for jury instructions. The trial judge properly refused this requested jury instruction because it was fully covered in the trial court's general charge. *Edwards v. State*, 540 S.W.2d 641, 649 (Tenn.1976); *Bostick v. State*, 210 Tenn. 620, 631, 360 S.W.2d 472, 477 (Tenn.1962).

 Finally, the defendant insists that the trial judge abused his discretion in probating only 60 days of the 90-days sentence and thus requiring her to serve 30 days. The trial judge afforded the defendant a full hearing[4] that complied with all of the procedural safeguards discussed in *Stiller v. State*, 516 S.W.2d 617 (Tenn.1974) and considered the criteria for probation recognized in the *Stiller* case and T.C.A. § 40–2904.

The trial judge observed that the defendant has a history of drug dependency but mitigated this factor considerably because she has voluntarily undergone treatment for her drug addiction. There was also evidence before the trial judge that the defendant's live-in boyfriend attempted to intimidate the jury during the trial of this case; and for this reason, he did not consider him a proper person for a parolee to associate with.

The trial judge was strongest influenced by the defendant's criminal record. The defendant had been convicted of shoplifting, and the trial judge also considered episodes of disorderly conduct and a bad check.

We do not agree with the defendant that the trial judge was arbitrary. After carefully considering and discussing the defendant's circumstances, he suspended 60 days of her 90-days sentence; he did not abuse his discretion in declining to suspend the entire sentence.

All of the issues presented for review are resolved in favor of the State, and the judgment of the Criminal Court is affirmed.

DWYER and CORNELIUS, JJ., concur.

---

4. The probation report is not included in the record.