**William Tollie LOWRANCE,**
**Plaintiff–Appellant,**

v.

**George PFLUEGER, et al.,**
**Defendants–Appellees.**

**No. 88–2351.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 8, 1989.
Decided July 10, 1989.

Raymond J. Pollen, Riordan, Crivello, Carlson & Mentkowski, Milwaukee, Wis.,

Paul Rettberg, Michael Resis, Querrey & Harrow, Ltd., Chicago, Ill., for defendants-appellees.

Walter Stern, Stern, Caviale & Stern, Kenosha, Wis., for plaintiff-appellant.

Before WOOD, Jr., POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff-appellant William Lowrance filed a § 1983 action alleging he was arrested and detained without probable cause in violation of the fourth and fourteenth amendments of the United States Constitution. He appeals the district court's grant of summary judgment in favor of the Benton County, Tennessee, sheriff and two Kenosha, Wisconsin, police officers involved in the arrest. We affirm.

## I.

On Thursday, December 1, 1983, Merian Lowrance, the plaintiff-appellant's wife, filed for divorce in the Chancery Court of Benton County, Tennessee. On the same day, Mrs. Lowrance obtained *ex parte* orders from the Tennessee Chancery Court granting her temporary custody of the Lowrances' three-year-old daughter, Heather, and restraining the plaintiff-appellant William Lowrance from "coming about, interfering with, telephoning or having any contact with the plaintiff [Mrs. Lowrance], or interfering with the custody of the minor child ... [or] exercising unsupervised visitation with said minor child pending a hearing." On December 1, 1983, the appellant Lowrance picked up Heather from a babysitter in Benton County and took her to his parents' home in Kenosha, Wisconsin. During the afternoon or evening of December 1, 1983, Mrs. Lowrance telephoned the Benton County Sheriff, Bobby Shannon, and informed him that her husband had taken Heather and left the area.

Sheriff Shannon advised Mrs. Lowrance to contact her attorney.

As of Sunday, December 4, 1983, the appellant and Heather had not returned to their home in Benton County, Tennessee. That morning, Merian Lowrance went to the Benton County Sheriff's Department and advised Sheriff Shannon that her attorney had suggested that she seek a warrant for her husband's arrest. Mrs. Lowrance advised Shannon that the appellant had taken their daughter, Heather, to Kenosha, Wisconsin, and she (Mrs. Lowrance) was fearful he would take the child to Canada. She also informed Shannon that she was having serious marital problems, a divorce was pending and that she had obtained *ex parte* custody and restraining orders.

Based on the information the appellant's wife provided, Sheriff Shannon typed an "Affidavit of Complaint" for Mrs. Lowrance's signature, stating as follows:

"On the above date [December 1, 1983] and while in Benton County, Tennessee, William Tollie Lowrance did unlawfully and with the intent, take Heather JoAnne Lowrance, age 3 yrs., from a babysitter in Benton County, Tennessee, and take her to the State of Wisconsin. William has made further statements to the effect that he was going to take the 3 year-old girl to Canada. William is the lawful father of Heather, however, Heather's Mother, Merian Lowrance, has been given Ex–Parte Custody of Heather by Chancellor Walton West. Furthermore a Restraining Order has been issued to be served upon William to restrain him from interfering with the custody of Heather pending a hearing."

While Sheriff Shannon typed the Affidavit of Complaint, or shortly thereafter, Mac Prichard, the Clerk of the Benton County General Sessions Court, arrived at the Sheriff's Department.[1] Merian Lowrance signed the Affidavit of Complaint before Prichard, who then signed the arrest war-

---

1. Pursuant to statute, clerks of the Court of General Sessions of the state of Tennessee (the criminal court) are authorized to "issue warrants and other process and writs...." Tenn. Code § 18–4–203. Mac Prichard was named as a defendant in the appellant's complaint. The District Court for the Eastern District of Wisconsin entered an order dismissing Prichard from the case, ruling that the court lacked personal jurisdiction over him. That order has not been appealed.

rant attached thereto. The warrant commanded the appellant's arrest on the ground "there is probable cause to believe that [the appellant committed] the offense of kidnapping a child under the age of sixteen years," in violation of Tennessee Code § 39–2–303.[2]

In the early afternoon of December 4, 1983, the City of Kenosha, Wisconsin, Police Department received a teletype message from the Benton County, Tennessee, Sheriff's Department reciting that:

"The Benton County Sheriff's Department has received a warrant from the Criminal Court of Benton County, Tennessee, for the arrest of William Tillie [sic] Lowrance ... for the offense of kidnapping a child under the age of 16 yrs. This was issued as a violation of 39–2–303 Tenn.Code. The child is a 3 year-old female with blonde hair, named Heather. She is the daughter of William Lowrance, however the child's mother, Merian Lowrance, has been granted legal custody ... by ex parte proceedings. William Lowrance is currently at his parent's home in Kenosha at 7847 17th Avenue. He is preparing to leave for Canada. We would ask that daughter be taken into custody also and placed with Department of Human Services until she can be picked up. If you need complete affidavit on warrant please advise."

On December 4 the Kenosha, Wisconsin, Police Department command responded with a teletype message to the Benton County, Tennessee, Sheriff's Department stating the appellant's arrest warrant did not appear on the National Crime Information Center's (NCIC) computer and that the "warrant must be on NCIC files for us to pick up and hold [the appellant]." Later

that afternoon, a warrant for the arrest of William Lowrance appeared on the NCIC computer. Based on the information in the NCIC computer, Kenosha Police Officers George Pflueger and Gary Sentieri arrested William Lowrance during the evening hours of December 4, 1983, and detained him in the Kenosha county jail. The appellant, after being confined overnight in jail, was released the following day on a $1,000 signature bond. Three days later, on December 8, 1983, the appellant appeared before a Kenosha County Court Commissioner, who reviewed the warrant of arrest, found it to be "defective" and quashed it. Benton County, Tennessee, subsequently dropped the charges against the appellant.[3]

The appellant alleges in his complaint that Sheriff Shannon and Officers Pflueger and Sentieri were responsible for his arrest and detention without probable cause in violation of the fourth and fourteenth amendments of the United States Constitution. Specifically, he claims Sheriff Shannon violated his rights in making application for the arrest warrant without initially establishing the appellant's knowledge of the *ex parte* custody and restraining orders issued to Mrs. Lowrance. He argues Sheriff Shannon was required to establish the appellant's knowledge of the orders because "it was not a crime under Tennessee law for a lawful parent to leave the State of Tennessee to go to another state with a minor child." Furthermore, the appellant alleges Officers Pflueger and Sentieri violated his rights in arresting him without independently ascertaining whether probable cause existed.

The district court granted summary judgment in favor of Sheriff Shannon on qualified immunity grounds, stating: "[A]

**2.** At all relevant times § 39–2–303 provided:
"Every person who unlawfully takes or decoys away any child under the age of sixteen (16) years, with intent to detain or conceal such child from its parents, guardian, or other person having the lawful charge of such child, shall, on conviction, be imprisoned in the penitentiary not less than one year nor more than five (5) years."

**3.** The record fails to recite the grounds for the court commissioner's ruling, nor does it provide an explanation for Benton County, Tennessee's

decision to drop the charges against the appellant, but the absence of record evidence elaborating on those decisions does not effect our disposition of this case. The appellant's only allegation of illegality in his arrest is that it was effected without probable cause and, as we discuss *infra,* the only question before us is whether Sheriff Shannon and Officers Pflueger and Sentieri had an objectively reasonable basis for believing probable cause existed. We are limited to the record presented for review.

reasonably well-trained officer could conclude that the facts alleged indicate that plaintiff knew he had lost custody of Heather and took Heather to Wisconsin to keep Heather away from plaintiff's wife. Therefore, defendant Shannon could reasonably conclude that, under the circumstances, the allegations in the affidavit of complaint were sufficient to establish probable cause."

The court also granted summary judgment in favor of Kenosha Police Officers Pflueger and Sentieri, ruling that they were not required to conduct an independent investigation into the question of probable cause but could reasonably rely upon the NCIC's computer and the information received via teletype from the Benton County Sheriff's Department.

## II.

■ Initially, we determine whether Sheriff Shannon is entitled to qualified immunity from liability for damages for his role in the appellant's arrest. In a § 1983 action based upon a violation of the fourth amendment, it is not sufficient to establish that an arrest warrant was "defective" (as the Kenosha County Court Commission determined in this case) or that an arrest was made without probable cause. *Donald v. Polk County*, 836 F.2d 376, 384 (7th Cir. 1988). Rather, the qualified immunity defense will shield the defendant from liability unless the record demonstrates that the defendant had no reasonable good faith belief in the legality of the seizure. *Id.* The Supreme Court explained the "reasonableness" or "good faith" standard in the qualified immunity context in *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89

L.Ed.2d 271 (1986). In that case, a Rhode Island state trooper (Malley) presented felony complaints and affidavits to a Rhode Island state district court judge, who signed arrest warrants attached thereto. The charges against the arrestees were eventually dropped when the grand jury refused to return an indictment. The arrestees later brought suit under § 1983 alleging that Malley's application for arrest warrants, under the circumstances presented, violated their rights under the fourth and fourteenth amendments.

The Supreme Court held that the standard of "objective reasonableness ... defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest." *Malley*, 475 U.S. at 344, 106 S.Ct. at 1097. Thus,

"Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost."

*Id.* at 344–45, 106 S.Ct. at 1097–98. The Supreme Court emphasized in *Malley* and this court has reiterated that the test is an objective one, requiring that "the plaintiff ... demonstrate that a reasonable official, confronted with the specific facts at issue and the law in effect at the time, would have known that his conduct violated the plaintiff's constitutional rights." *Schertz v. Waupaca County*, 875 F.2d 578, 583 (7th Cir.1989), citing *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed. 2d 523 (1987), and *Green v. Carlson*, 826 F.2d 647, 651 (7th Cir.1987). *See also Rakovich v. Wade*, 850 F.2d 1180, 1201–1210 (7th Cir.1988) (en banc).[4]

---

**4.** We note that the Supreme Court in *Malley* rejected the petitioner's argument that an officer requesting an arrest warrant is shielded from damages liability because the act of applying for a warrant is *per se* objectively reasonable, provided that the officer believes that the facts alleged in the affidavit presented in support of the warrant are true. The Court explained:

"This view of objective reasonableness is at odds with our development of that concept in *Harlow* [*v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ] and [*United States v.*] *Leon* [468 U.S. 897, 104 S.Ct. 3405,

82 L.Ed.2d 677 (1984) ]. In *Leon*, we stated that our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. [Citation omitted] The analogous question in this case is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. [Footnote omitted]"

Here, Sheriff Shannon presented Mary Lowrance's Affidavit of Complaint to Mac Prichard, who was authorized under Tennessee law to issue arrest warrants, in support of Mrs. Lowrance's request for the appellant's arrest pursuant to Tennessee Code § 32–2–303, which recites that a person commits the crime of kidnapping when he or she "unlawfully takes or decoys away any child under the age of 16, with intent to detain or conceal such child from its parents, guardian or other person having the lawful charge of such child. . . ." (*See supra* n. 2).

 On the face of the affidavit it is clear that Mrs. Lowrance had "lawful charge" of Heather, in that she had been granted custody of the child and had obtained an order restraining the appellant from interfering with custody. In addition, the Affidavit alleges a "taking" in violation of the statute, stating the appellant did "take Heather . . . from a babysitter in Benton County, Tennessee, . . . to the state of Wisconsin." We note there is no record evidence that Mrs. Lowrance consented to Heather's accompanying the appellant on his journey north. Moreover, we are convinced that the Affidavit contains more than sufficient information to support a belief that the appellant took Heather "with intent to detain or conceal" in violation of § 39–2–303. In this regard, the Affidavit reflects the following: the appellant and Heather had been missing for three days at the time Sheriff Shannon requested the arrest warrant; the appellant took Heather to Kenosha, Wisconsin, (we take judicial notice of the fact that Kenosha, Wisconsin, is several hundred

miles north of Tennessee and in the general direction of Canada, and is less than 300 miles from a Canadian port of entry); the appellant had previously threatened to take Heather to Canada; and the Affidavit's reference to the custody and restraining orders demonstrates that Heather was in the middle of a severely damaged marital relationship. Indeed, Mrs. Lowrance told Sheriff Shannon that she and the appellant were having serious marital problems and that a divorce was pending. We are convinced a law enforcement officer could reasonably conclude from the Affidavit of Complaint, and specifically from its reference to the custody and restraining orders issued to Mrs. Lowrance, Heather's three-day absence, the breakdown of the Lowrances' marriage, the appellant's stated desire to remove Heather to Canada and his having traveled several hundred miles in that direction, that there was probable cause for the appellant's arrest for violation of § 39–2–303.

The appellant urges the Affidavit of Complaint lacks sufficient indicia of probable cause for qualified immunity purposes because it failed to state affirmatively that the appellant took Heather knowing she had been placed in Mrs. Lowrance's legal custody. The need for such an averment is premised on the Tennessee Supreme Court's holding in *Hicks v. State,* 158 Tenn. 204, 12 S.W.2d 385 (1928), that a parent cannot "kidnap" his or her own child in violation of § 39–2–303 unless and until the parent becomes aware that legal custody has been awarded to another person.[5] In fact, the appellant alleges, Sheriff Shannon presented the Affidavit knowing the appel-

---

*Malley,* 475 U.S. at 345, 106 S.Ct. at 1098. The Court went on the state in footnote 9:

"[T]he rule we adopt in no way 'requires the police officer to assume a role even more skilled . . . than the magistrate.' [Citation omitted] It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, *ibid.,* and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable. But it is different if no officer of reasonable competence would have requested the warrant, i.e., his request is outside the range of the professional competence expected of an

officer. If the magistrate issues the warrant in such a case, his action is not just a reasonable mistake, but an unacceptable error indicating gross incompetence or neglect of duty. The officer then cannot excuse his own default by pointing to the greater incompetence of the magistrate."

*Id.* at 346 n. 9, 106 S.Ct. at 1098 n. 9.

5. In *Hicks,* Mrs. Hicks was awarded custody of the Hicks children in an *ex parte* divorce proceeding without knowledge of the father, who was in an Alabama Prison when the divorce decree was entered. The court explained its holding that Mr. Hicks could not be convicted for kidnapping his children, absent knowledge of the divorce and custody decree:

lant was unaware custody had been awarded to Mrs. Lowrance, as the Affidavit states "a Restraining Order has been issued *to be served* upon" the appellant. (Emphasis added).

Sheriff Shannon testified during his deposition that he did not know when he applied for the appellant's arrest warrant whether the appellant had been served with either the custody or the restraining order. Indeed, as the appellant observes, the Affidavit itself demonstrates that at least the restraining order had yet "to be served" as of December 4, 1983. Thus, the record demonstrates that Sheriff Shannon presented Mrs. Lowrance's Affidavit without knowing for certain that the appellant took Heather in knowing violation of his wife's custodial rights. The question before us is whether a reasonable law enforcement officer in Sheriff Shannon's position would have believed, based on the Affidavit of Complaint (as well as Sheriff Shannon's independent knowledge of the Lowrances' severe marital difficulties) and the law in effect at the time (including *Hicks*), that a warrant should have issued—considering *Malley's* "objective reasonableness" standard provides "ample room for mistaken judgments," and "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley,* 475 U.S. at 341 and 343, 106 S.Ct. at 1096 and 1097.

Notwithstanding the Tennessee Supreme Court's holding in *Hicks*, we are convinced a law enforcement officer might very reasonably conclude under the circumstances presented that the appellant took Heather from Tennessee to Wisconsin in violation of § 39–2–303. Sheriff Shannon knew the appellant and Mrs. Lowrance had a history of

and were presently undergoing serious marital problems, possibly culminating in a divorce, and that Mrs. Lowrance had legal custody of Heather. He also could reasonably assume the couple had argued over Heather, as Mrs. Lowrance told him (and the Affidavit of Complaint recites) that the appellant had previously threatened to take the child to Canada. In addition, the appellant transported the child several hundred miles from Benton County, Tennessee, in the direction of Canada on December 1, 1983, without Mrs. Lowrance's knowledge or consent. Furthermore, the appellant took Heather on the very day the custody and restraining orders issued, on his wife's petition, a coincidence which in our view could logically lead an officer reasonably to conclude that the appellant knew his wife was going to or had obtained the custody and restraining orders, even though service apparently had not been accomplished. The timing of the appellant's action, as well as the distance and direction he traveled with Heather, strongly suggest that the incident was not the typical exercise of a parental right to custody, the product of a minor domestic squabble or an innocent desire to visit Heather's grandparents. Rather, we have little doubt that Sheriff Shannon might very reasonably have concluded that the appellant's conduct resulted from an "intent to detain or conceal" Heather within the meaning of § 39–2–303, and thus was entitled to reasonably believe there was probable cause for his arrest. We therefore affirm the district court's grant of summary judgment to Sheriff Shannon on qualified immunity grounds.[6]

### III.

The district court also ruled that Kenosha, Wisconsin, Police Officers Sentieri

---

"[W]hen the parent of the child is on trial for kidnapping it, the motivating parental instinct and real or supposed parental right to its custody must be considered.... If, ignorant of the force and effect of the decree for divorce, in which custody of the children was given his wife, Hicks returned to Tennessee and asserted the parental claim, he would be not be guilty of the crime of kidnapping under the statute. It was intended to protect parental and other lawful custody of children against the greed and malice of the kidnapper,

not to penalize the parent for the erroneous assumption of a parental right."
*Hicks,* 12 S.W.2d at 386. Unlike this case, *Hicks* resulted from Mr. Hicks' challenge to the sufficiency of the evidence underlying his kidnapping conviction. The *Hicks* court did not reach the question of civil liability of the officers (if any) involved in Hicks' arrest.

6. There is no merit to the appellant's contention that summary judgment should not have been granted because the qualified immunity defense presents questions of fact for the jury. The "objective reasonableness" standard adopted in

and Pflueger are entitled to qualified immunity from liability because they acted reasonably in arresting the appellant based on the information transmitted from the National Crime Information Center and the Benton County Sheriff's Department. The appellant seeks reversal of the district court's order, arguing that the information the Kenosha, Wisconsin, police officers received was insufficient to establish probable cause for kidnapping, and that under the law they were required to conduct their own investigation into probable cause.

■ Officers Sentieri and Pflueger were informed, via teletype from the Benton County, Tennessee, Sheriff's Department, that a warrant had issued for the appellant's arrest; that the appellant had been charged with kidnapping his three-year-old daughter in violation of a Tennessee statute; that Mrs. Lowrance had been granted legal custody of the child; and that the appellant was "preparing to leave for Canada." Moreover, the Kenosha Police Department took the precaution of insisting that the appellant's arrest warrant be entered and recorded on the NCIC computer before it took any action. Officers Sentieri and Pflueger acted only after the existence of the warrant had been confirmed through the NCIC. Because we have previously determined that Sheriff Shannon acted reasonably in making application for the appellant's warrant of arrest, and Officers Sentieri and Pflueger had the same information Sheriff Shannon possessed (and, in addition, knew that a warrant had issued for the appellant's arrest, from which they could infer that a neutral, detached judicial officer had reviewed the information and found probable cause), it follows that Offi-

cers Sentieri and Pflueger acted reasonably in arresting the appellant. Therefore, Kenosha, Wisconsin, Police Officers Sentieri and Pflueger are entitled to qualified immunity as well. *See also Donta v. Hooper,* 774 F.2d 716, 721 (6th Cir.1985), *cert. denied,* 483 U.S. 1019, 107 S.Ct. 3261, 97 L.Ed.2d 760 (1987) (Ohio police entitled to qualified immunity for arrest based upon a teletype from Kentucky state police); *Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971) ("[P]olice officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.") (dicta).

The district court's judgment is AFFIRMED.

*Malley* was "specifically designed to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment....'." 475 U.S. at 341, 106 S.Ct. at 1096, quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *See also Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987); *Greenberg v. Kmetko,* 840 F.2d 467, 472 (7th Cir.1988) ("[T]his inquiry is a question of law, ... and ... the determination should generally be made at the outset of a case to

avoid unnecessary litigation.") There is also no merit to the appellant's argument that the trial court ignored a material issue of fact regarding Sheriff Shannon's "subjective good faith" in seeking the appellant's arrest. An officer's subjective beliefs are irrelevant for qualified immunity purposes. *Anderson,* 107 S.Ct. at 3040. The relevant issue is the objective (albeit fact-specific) question whether a reasonable officer could have believed his actions were lawful in light of the law in effect at the time and the information he possessed.